IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Kelaher, Connell & Conner, P.C., | ) | C/A No. 4:19-cv-00693-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Auto-Owners Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Before the court is a Motion for Summary Judgment filed by Defendant Auto-Owners Insurance Company ("Auto-Owners") as to all claims asserted by Plaintiff Kelaher, Connell & Conner, P.C. ("Kelaher"). [ECF No. 13.] The dispute concerns whether Kelaher is entitled to coverage pursuant to a civil authority provision in a business interruption insurance policy issued by Auto-Owners. The civil authority order at issue required coastal residents to evacuate in preparation for Hurricane Florence making landfall. Kelaher evacuated, returned to the business 3.5 days later, filed a claim for business losses during the period covered by the evacuation order, and Auto-Owners denied the claim.

Kelaher filed this lawsuit on January 28, 2019, in the Court of Common Pleas for Horry County, alleging breach of contract, breach of contract accompanied by fraudulent act, and bad faith refusal to pay insurance benefits. Auto-Owners timely removed the case to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. On June 25, 2019, Auto-Owners filed the motion that is the subject of this Order. The motion was fully briefed and counsel for the parties appeared for a hearing on February 19, 2020.[1] For the reasons outlined, the court finds that there is no

---

[1] During the hearing, counsel for Kelaher noted that if the court believes this case presents a novel issue of South Carolina law, the question should be certified to the South Carolina Supreme Court.

1

genuine dispute as to any material fact, and Auto-Owners is entitled to judgment as a matter of law on all claims.

## BACKGROUND AND UNDISPUTED FACTS

The facts are undisputed. Kelaher is a law firm in Horry County, South Carolina. [ECF No. 1-1.] It is insured through a Businessowners Insurance Policy, No.94-302-959-00 (the "policy"), purchased from Auto-Owners, which includes a type of business interruption insurance known as civil authority coverage. [ECF Nos. 1-1, at ¶¶ 3, 5; 4, at ¶¶ 2–3.] The civil authority coverage is found in a coverage extension. The Coverage Extension reads:

> **A. COVERAGE, 5. Additional Coverages**, the following Additional Coverage is added:
>
> **5. ADDITIONAL COVERAGES**
>
> **b. Business Income and Extra Expense**
>
> **(3) Coverage Extension**
>
> We extend Business Income and Extra Expense to include the actual loss or damage sustained by you which is a direct result of an interruption of the business covered by this Policy because access to the described business premises is prohibited by order of civil authority because of damage or destruction of property adjacent to the described premises by the perils insured against. Coverage applies while access is denied, but no longer than two consecutive weeks.

---

A certification motion was not filed. In any event, the court finds that certification is not necessary. The Fourth Circuit Court of Appeals has held that "where there is no case law from the forum state which is directly on point, the district court [must] attempt[] to do as the state court would do if confronted with the same fact pattern." *Roe v. Doe*, 28 F.3d 404, 407 (4th Cir. 1994). "Only if the available state law is clearly insufficient should the court certify the issue to the state court." *Id.* The answer to the issue in this case is reached by applying general principles of contract interpretation. Accordingly, this court will "take care not to burden [its] state counterparts with [an] unnecessary certification request[]." *Boyter v. Commissioner of Internal Rev. Serv.*, 668 F.2d 1382, 1385 n.5 (4th Cir. 1981).

[ECF No. 13-1, 54228 (4-13).] The policy was in place on September 10, 2018, as South Carolina was preparing for the threat of Hurricane Florence. [ECF Nos. 1-1, at ¶ 4; 4, at ¶ 3.]

On September 10, 2018, Governor Henry McMaster issued Executive Order 2018-29.[2] [ECF No. 13-2.] Therein, the Governor noted that Hurricane Florence posed "a significant threat" to South Carolina and required the State to "take timely precautions to protect property, critical infrastructure, communities, and the general safety, security and welfare of the people" of South Carolina. *Id.* As a result of the threat, the Governor ordered a mandatory evacuation of several coastal areas, including specific zones in Horry County, beginning 12:00 p.m. on Tuesday, September 11, 2018. *Id.* Kelaher's office is located within a mandatory evacuation zone. [ECF Nos. 1-1, at ¶¶ 6–8; 4, at ¶ 4.] On September 15, 2018, the Governor issued a second Executive Order, No. 2018-36. This second order lifted the first evacuation order, effective as of 9:00 a.m. on Sunday, September 16, 2018. [ECF No. 13-3.] As a result of the two executive orders, Kelaher's office was closed from noon on Tuesday, September 11, 2018, through Friday September 14, 2018, and reopened on Monday, September 17, 2018—a total of 3.5 days. [ECF Nos. 1-1, at ¶ 10; 4, at ¶ 4.][3]

On September 18, 2018, Kelaher made a claim for business interruption loss in accordance with the above-referenced Coverage Extension. [ECF No.13-4.] On October 10, 2018, Kelaher made a demand for $47,363.15, representing 3.5 days of business interruption. [ECF No. 13-5.]

---

[2] The court takes judicial notice of the executive orders as matters of public record. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (court may "properly take judicial notice of matters of public record"); Fed. R. Evid. 201(b).
[3] While Auto-Owners's Answer denied the closing of Kelaher's business for 3.5 days, the court considers this allegation as true for purposes of deciding this motion. [*See* ECF No. 13 at p.2 (acknowledging Kelaher's business was closed as a result of the evacuation order).]

The claim was denied on December 3, 2018, followed by an amended denial on December 14, 2018. [ECF Nos. 13-6; 13-7.]

The parties' dispute surrounds whether the Coverage Extension provides coverage for Kelaher's business income losses arising out of the Governor's order for a mandatory evacuation of Horry County. The court finds that it does not.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. American Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party makes this threshold demonstration, the non-moving party may not rest upon mere allegations or denials averred in the pleading, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56; *see also Celotex Corp.*, 477 U.S. at 323. A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). A litigant is unable to "create a genuine issue of material fact through mere speculation or the building of one inference

4

upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996).

**DISCUSSION**

The issue before the court is one of contract interpretation. If the court finds that the Coverage Extension is unambiguous and requires a nexus between the issuance of the civil authority order and existing damage or destruction to property, Auto-Owners is entitled to judgment as a matter of law on all three claims.

**I. Breach of Contract Claims.**

Kelaher asserts claims for breach of contract and breach of contract accompanied by fraudulent act. [ECF No. 1-1, at ¶¶ 1–20.] Auto-Owners claims it is entitled to summary judgment on these claims because Kelaher cannot establish loss falling within the terms of the Coverage Extension and, therefore, cannot establish a breach of the policy. Specifically, Auto-Owners claims there are two requirements to trigger the Coverage Extension: (1) interruption of business because of an order of civil authority and (2) the order of civil authority is issued "because of" damage or destruction of an adjacent property. [ECF No. 13, at p.7.] Auto-Owners claims that the second requirement is not met. Applying general principles of contract law and the interpretation of similar provisions, this court agrees with Auto-Owners.

**A. Basic Principles of Contract Construction.**

In South Carolina, "[i]nsurance policies are subject to the general rules of contract construction." *B.L.G. Enters., Inc. v. First Fin. Ins. Co.*, 514 S.E.2d 327, 330 (S.C. 1999). "The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions

5

as determined by the contract language." *Schulmeyer v. State Farm Fire and Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003). "An insurance contract is read as a whole document so that 'one may not, by pointing out a single sentence or clause, create an ambiguity.'" *Id.* (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 348 (S.C. 1976)). "The meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *State Farm Fire and Cas. Co. v. Morningstar Consultants, Inc.*, No. 6:16-cv-01685, 2017 WL 2265919, at *2 (D.S.C. May 24, 2017) (citing *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976)). "When a contract is unambiguous, clear and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary and popular sense." *C.A.N. Enters., Inc. v. South Carolina Health & Human Servs. Fin. Comm'n*, 373 S.E.2d 584, 586 (S.C. 1988). An insurer's duty under a policy is "defined by the terms of the policy and cannot be enlarged by judicial construction." *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990).

Ambiguities, in contrast, are resolved in favor of the insured. *Greenville Cnty. v. Insurance Reserve Fund*, 443 S.E.2d 552, 548 (S.C. 1994) ("Where the words of an insurance policy are capable of two reasonable interpretations, that construction will be adopted which is most favorable to the insured." (citing *McPherson v. Michigan Mut. Ins. Co.*, 426 S.E.2d 770, 771 (S.C. 1993))). "That different courts have construed the language of an insurance policy differently is some indication of ambiguity." *Id.* The insured bears the burden to establish that a claim falls within the coverage of the insurance contract, see *Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968), and the burden of the insurer to establish an exclusion to coverage. *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979). "Where a motion for summary judgment

6

presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous." *Moss v. Porter Bros., Inc.*, 357 S.E.2d 25, 27 (S.C. Ct. App. 1987).

**B. Application of Principles to Coverage Extension.**

The Coverage Extension provides coverage for loss "which is a direct result of an interruption of the business covered by this policy because access to the described business premises is prohibited by order of civil authority because of damage or destruction of property adjacent to the described premises by the perils insured against." There is no dispute that (1) business covered by the policy was interrupted (2) because access to the described business premises was prohibited by order of civil authority. The dispute is as to the meaning of the remainder—"because of damage or destruction of property adjacent to the described premises." More specifically, the court must decide if the phrase "because of" following "order of civil authority" unambiguously requires the civil authority order to have a connection, link, or nexus to existing damage or destruction of adjacent property when it is issued.

The parties were unable to locate any South Carolina case law addressing civil authority provisions, like the Coverage Extension at issue in this case.[4] Considering the basic principles of contract law outlined above, however, the court finds that the provision is unambiguous.

---

[4] Kelaher argues that the court should apply the doctrine of reasonable expectations. In South Carolina, the doctrine of reasonable expectations does not support creation of a substantive right. Instead, "the reasonable expectations of the parties entering into an insurance contract will be honored within the confines of [South Carolina's] interpretive rules and fairness principles." *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 406 (S.C. 2014). Because the Coverage Extension is unambiguous, the court declines to apply the doctrine. *See Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399 (S.C. 2014) ("[W]e decline to apply the doctrine where a contract of insurance unambiguously denies coverage under its plain terms."); *Allstate Property and Casualty Ins. Co. v. English*, No. 4:16-cv-3404, 2017 WL 11297114, at *7 (D.S.C. Nov. 20, 2017) (declining to apply doctrine where judge concluded that coverage was unambiguously excluded).

7

Kelaher's sole "ambiguity" argument is that the "because of" language in the Coverage Extension results in a latent ambiguity. [ECF No. 18 at pp.7–8.] "A latent ambiguity exists when there is no defect arising on the face of the instrument, but arising when attempting to apply the words of the instrument to the object or subject described." *Beaufort Cnty. School Dist. v. United Nat'l Ins. Co.*, 709 S.E.2d 85, 95 (S.C. Ct. App. 2011). An example of a latent ambiguity is where there is a named beneficiary in a will and two individuals share that same name; the language seems clear, but in applying the terms, an ambiguity arises. *See Smith v. Coxe*, 191 S.E. 422, 425–26 (S.C. 1937) (giving above example of latent ambiguity). According to Kelaher, the latent ambiguity in this case arises because "[i]n attempting to apply the words of the Policy to the subject, there is ambiguity in when the damage or destruction of property must occur." [ECF No. 18 at p.7.] Kelaher's argument is misplaced. Reading the Coverage Extension in its entirety, the phrase "because of," by its plain terms, necessitates the existence of property damage or destruction at the time the civil authority order is issued.

The Coverage Extension requires access to the insured property to be "prohibited by order of civil authority *because of* damage or destruction of property adjacent to the described premises by the perils insured against." (emphasis added). A civil authority order preventing access to the property for some reason other than "because of" damage or destruction of an adjacent property is insufficient. Naturally, if a civil authority order is issued, and there is no damage to the adjacent property, it could not have been issued "because of" damage to the adjacent property. The phrase "because of" is a preposition connecting "order of civil authority" and introducing "damage or destruction of property adjacent to." *See Because of*, Cambridge Dictionary (online ed. 2019) (preposition; meaning "as a result of"); *Because of*, Merriam-Webster (online ed. 2019) ("by reason of;" "on account of"); *Because of*, Oxford Learner's Dictionaries (online ed. 2019)

8

(preposition; "used when giving a reason"); *Gould v. Freedom of Information Comm'n*, 104 A.3d 727, 744 (Conn. 2014) (Espinosa, J., with McDonald, J., joins, and DiPentima, J., joins in part, dissenting) ("It is a basic rule of grammar that the function of a preposition is to express the relation between the object of the preposition and the word or phrase that is being modified by the preposition").

The phrase "because of" is found in various types of insurance policies, including comprehensive general liability policies and businessowners policies, but is rarely interpreted.[5] *See Western Nat. Mut. Ins. Co. v. Frost Paint & Oil Corp.*, No. C3-97-1118, 1998 WL 27247, at *2 (Minn. Ct. App. Jan. 27, 1998) (citing Note, *Liability Coverage for 'Damages Because of Property Damage' Under the Comprehensive General Liability Policy*, 68 Minn. L. Rev. 795, 813–14 (1984) (concluding "because of" should be read as "arising from" or "as a consequence of" because that is the phrase's "common, popular, and ordinary meaning")).

In *Starr Indemnity & Liability Co. v. Miami Chocolates, LLC*, 337 F. Supp. 3d 1216 (S.D. Fla. 2018), the United States District Court for the Southern District of Florida touched on this question. The policy at issue there provided business liability coverage for "sums that the insured becomes legally obligated to pay as damages because of . . . 'personal and advertising injury' to which the insurance applies." *Id.* at 1223–24. In determining whether a duty defend the insured arose, the court looked to the underlying complaint, concluding that "to be covered, [the] underlying complaint must allege facts establishing a personal and advertising injury." *Id.* at 1224. If the potential damages were not "because of" a personal or advertising injury, there would not

---

[5] A logical inference from the lack of analysis on this question is that the phrase "because of" is unambiguous and, therefore, does not require any explanation. *See, e.g., Berry Plastics Corp. v. Illinois Nat'l Ins. Co.*, 244 F. Supp. 3d 839, 850 (S.D. Ind. 2017) (applying Indiana law and finding "because of" language unambiguous, particularly in light of the plaintiff's failure to identify any cases to the contrary).

be a duty to defend.  Extending the analysis to this case, if the civil authority order was not issued "because of" damage or destruction to property—and this court finds that it was not—there is no coverage.

The Southern District of Florida further compared the phrase "because of" in the coverage provision to an "arising-out-of" clause in an exclusion. The court, citing an Eleventh Circuit Court of Appeals decision, concluded that "[t]he term 'arising out of' is broader in meaning than the term 'caused by' and means 'originating from,' 'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with[,]' . . . [and] contemplates a *more attenuated link* than the phrase 'because of.'" *Id.* at 1225 (citing *Land's End at Sunset Beach Cmty. Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 745 F. App'x 314, 319 (11th Cir. 2018) (emphasis added)); *see also Garcia v. Federal Ins. Co.*, 969 So.2d 288, 292 (Fla. 2007) (finding phrase "because of" is unambiguous). Thus, the use of the phrase "because of" in the Coverage Extension unambiguously mandates a link between the civil authority order and property damage.

As noted above, South Carolina construction principles necessitate this conclusion. This court's duty is "limited to the interpretation of the contract made by the parties themselves." *C.A.N. Enterprises, Inc.*, 373 S.E.2d at 587.  Ultimately, it is the parties who have the "right to construct their own contract without interference from courts to rewrite or torture the meaning of the policy to extend coverage." *Schulmeyer*, 579 S.E.2d at 134; *see also South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990) (noting insurer obligations "cannot be enlarged by judicial construction"). Here, the language "because of" unambiguously requires a link between the issuance of the civil authority order and the property damage.  Any contrary conclusion would result in an improper extension of coverage.  As succinctly stated by the United States District Court for the Southern District of Texas, "[r]equiring such a causal link

10

between the prior damage and the action by a civil authority does not rewrite the parties' policy, but rather gives effect to the language it contains." *South Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, No. H-06-4041, 2008 WL 450012, at *10 (S.D. Tex. Feb. 15, 2008).

Because Kelaher has not presented any evidence that the civil authority order was issued "because of damage or destruction" to property other than the insured property, Auto-Owners is entitled to judgment as a matter of law on the breach of contract and breach of contract accompanied by fraudulent act claims.

### C. Civil Authority Orders Coverage—A Review of Cases.

Both Auto-Owners and Kelaher refer to cases in other districts interpreting similar civil authority order provisions in business interruption insurance cases. While the cases are of no precedential value to this court, they are nevertheless instructive. The court finds that these decisions support its finding that the Coverage Extension is unambiguous.

In *Dickie Brennan & Co., Inc. v. Lexington Insurance Co.*, 636 F.3d 683 (5th Cir. 2011), the Fifth Circuit Court of Appeals noted the "general rule" that "[c]ivil authority coverage is intended to apply to situations where access to an insured's property is prevented or prohibited by an order of civil authority issued as a direct result of physical damage to other premises in the proximity of the insured's property." *Id.* at 686–87. In that case, the provision covered actual loss of business income "caused by action of civil authority that prohibits access to the described premises *due to* direct physical loss of or damage to property, other than at the described premises[.]" *Id.* at 685 (emphasis added). The Fifth Circuit was faced with determining whether the phrase "due to" required a connection between the civil authority order and the damage to property other than the insured's premises. Applying basic Louisiana contract principles, the court found that "the 'due to' language in [the] policy requires a close causal link by its plain terms." *Id.* at 686. This court

agrees with the well-reasoned analysis of the Fifth Circuit. The phrase "because of," much like "due to," requires a link between the civil authority order and the damage sustained to the adjacent property by its plain terms.

The court's decision is further supported by *Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.*, No. 09-6057, 2010 WL 4026375 (E.D. La. Oct. 12, 2010). The underlying factual scenario in *Jones* is similar to the undisputed factual scenario before this court. There, the plaintiff law firm had a policy that included a civil authority order provision. The provision allowed recovery of business income loss incurred "due to the actual impairment of [] operations, directly caused by the prohibition of access to [the] premises by a civil authority." *Id.* at *3. The provision further provided that "prohibition of access by a civil authority must be the *direct result of* direct physical loss or damage to property away from such premises[.]" *Id.* (emphasis added). In preparation for Hurricane Gustav, the Mayor of New Orleans issued a mandatory evacuation order. The plaintiff law firm evacuated and sought coverage, which the defendant insurance company denied. Applying Louisiana contract law, which is markedly similar to South Carolina contract law, the court found that the provision "does not insure against impairment of operations that occurs simply because a civil authority prohibits access." *Id.* Instead, the civil authority order must "meet[] the requirements of the policy," one being "a nexus between the order and certain physical damage." *Id.*

The same analysis applies here. The court finds that the phrase "because of," while slightly broader than the phrase "direct result of," similarly lacks ambiguity—there still must be some link between the civil authority order and damage to adjacent property. Thus, without a nexus between the issuance of the civil authority order and the damage to an adjacent property, there is no coverage.

The remaining cases relied upon by Auto-Owners further support the court's conclusion. *See, e.g., South Texas Medical Clinics*, 2008 WL 450012, at *10 (finding appropriate denial of coverage where evacuation order "was issued due to the *anticipated* threat of damage to the county" and that "[r]equiring such a causal link between the prior damage and the action by a civil authority does not rewrite the parties' policy, but rather gives effect to the language it contains") (emphasis added); *United Air Lines, Inc. v. Insurance Co. of Pa.*, 439 F.3d 128 (2d Cir. 2006) [6] (denial of coverage to airline when civil authority order halted flights due to 9/11 terrorist attacks; concluding airport was not shut down "as a direct result of damage to" the Pentagon); *Paradies Shops, Inc. v. Hartford Fire Ins. Co.*, No. 1:03-cv-3154, 2004 WL 5704715 (N.D. Ga. Dec. 15, 2004) (finding phrase "direct result," as used in in the policy, was unambiguous; further finding plaintiff was unable to establish that the order of civil authority was issued as a result of the 9/11 attacks).

The cases relied upon by Kelaher do not change this result. In *Allen Park Theatre Co., Inc. v. Michigan Millers Mutual Insurance Co.*, 210 N.W.2d 402 (Mich. Ct. App. 1973), the court addressed a civil authority order provision in the context of certain riot-prevention orders issued following the death of Dr. Martin Luther King, Jr. Following Dr. King's death, several civil disturbances were reported in and around Detroit. As a result, the Governor of Michigan issued

---

[6] The court in *United Air Lines* concluded that the phrase "adjacent to" may be ambiguous, but it did not resolve the case on that issue. Instead, the court found that even if the "other" property at issue—the Pentagon—was "adjacent to" the insured's property—the airport—the insured could not "show that the Airport was shut down 'as a direct result of damage to' the Pentagon." 439 F.3d at 134. There was a "temporary halt of flights into and out of the Airport on 9/11 before the Pentagon was struck" and "the government's subsequent decision to halt operations at the Airport indefinitely was based on fears of *future* attacks." *Id.* (emphasis added). Likewise, this court need not decide the "adjacent to" question for two reasons: (1) the civil authority order was issued *before* Hurricane Florence damaged any property in Horry County and (2) the civil authority order was issued due to the *threat of* Hurricane Florence. Without any evidence of property damage in existence at the time the civil authority order was issued, the court does not reach the question of what constitutes "adjacent" property.

13

an executive order, closing all "places of amusement" until further notice. The plaintiff owned a theatre impacted by the executive order, and it sought coverage from the defendant under the civil authority order provision. The provision at issue allowed coverage of actual loss incurred, "[w]hen as a direct result of the peril(s) insured against, access to the premises described is prohibited by order of civil authority." *Id.* at 404. The question there was whether the provision required actual damage to the insured premises as a direct result of the conduct referenced in the civil authority order, *i.e.*, riots. Notably, that question is distinct from the question before this court—whether the civil authority order must have a link to damage or destruction to adjacent property at the time it is issued. Therefore, *Allen Park* does not guide this court's analysis, nor does it change this court's ruling.

*Assurance Co. of America v. BBB Service Co., Inc.*, 593 S.E.2d 7 (Ga. Ct. App. 2003) similarly fails to change the court's analysis. In *Assurance*, the civil authority provision allowed recovery if two conditions were met: (1) loss was caused by civil authority action prohibiting access to the insured premises and (2) that civil authority action was "due to direct physical loss of or damage to property, other than at the 'covered premises.'"[7] *Id.* at 7–8. The court conducted a bench trial on the sole issue of "whether the evacuation order was issued because of damage to . . . property other than the insured premise." *Id.* at 8. The trial court found in favor of the plaintiff, relying on the testimony of a member of the emergency decision-making team that one factor it considered in advising the Chairman of the County Commission to sign the evacuation order was the "fact that the storm had been causing damage in its path." *Id.* Reviewing the decision under a clearly

---

[7] As noted in footnote 6, *supra*, this court need not decide whether the "adjacent to" language in the Coverage Extension is ambiguous. The court notes, however, that the provision at issue in *Assurance* lacks any limiting language regarding the proximity of the damaged property to the insured property. Necessarily then, if the civil authority considered actual damage to *any* property other than that of the insured when issuing the civil authority order, coverage was implicated.

14

erroneous standard, the appellate court found that the decision could not be disturbed on appeal because there was some evidence to support the finding that the underlying order was issued "because of damage to . . . property other than the insured premise." *Id.* at 9.

The undisputed facts before this court differ from those in *Assurance* in significant respects. Executive Order 2018-29, which started the mandatory evacuation, does not reference any "damage or destruction of property," let alone "damage or destruction of property adjacent to the described premises." Rather, in reaching the decision to order a mandatory evacuation, it provides the following considerations:

- "the National Hurricane Center has advised that Hurricane Florence *will impact* the State of South Carolina, especially the coastal areas";

- "Hurricane Florence and the associated wind, heavy rain, localized flooding, and other severe weather, represent *a significant threat* to the State of South Carolina";

- It will "require that the State take *timely precautions* to protect property, critical infrastructure, communities, and the general safety, security, and welfare of the people of this State";

- The previously issued South Carolina Emergency Operations Plan "to provide for the health, safety, and welfare of residents and visitors located *in the threatened areas*"; and

- A determination that "evacuation is necessary for the preservation of life in and surrounding *the threatened areas* or for other emergency mitigation, response, or recovery efforts."

[ECF No. 13-2 (emphasis added).] None of the above-listed considerations reference "damage or destruction of" *any property* other than "the described premises." Instead, the language is focused on the potential, future, or predicted impacts on life and property.

Moreover, there is no evidence in the record evidencing that Hurricane Florence damaged any property *before* the Governor issued the evacuation order. Stated as plainly as the Coverage Exclusion, there is no evidence in the record that the civil authority order was issued "because of

15

damage or destruction of property." Auto-Owners is entitled to summary judgment on both contract claims.

## II. Bad Faith Claim.

Kelaher also asserts a claim for bad faith. The burden is on the insured to prove all elements of a cause of action for bad faith refusal to pay benefits under a contract. *See Crossley v. State Farm Mut. Auto. Ins. Co.*, 415 S.E.2d 393, 396–97 (S.C. 1992). The four elements of a claim are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured. *Id.* "If there is a reasonable ground for contesting a claim, there is no bad faith." *Id.* at 397.

In this case, Kelaher's losses are not covered under the plain terms of the policy. Moreover, Kelaher has not presented any evidence to indicate that the denial was made in bad faith. Given that coverage did not exist under the plain terms of the Coverage Extension, Auto-Owners had a reasonable basis to deny the claim. *See Paradies Shops*, 2004 WL 5704715, at *9 (granting summary judgment on a bad faith claim for similar reasons). The court, therefore, grants summary judgment in favor of Auto-Owners on the bad faith cause of action.

## CONCLUSION

For the foregoing reasons, Defendant Auto-Owners Insurance Company's Motion for Summary Judgment [13] is **GRANTED** in its entirety.

**IT IS SO ORDERED.**

/s/ Sherri A. Lydon
United States District Judge

February 24, 2020
Florence, South Carolina

16